IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BENJAMIN SANGRAAL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 3:14-CV-661 SMY/RJD |
| ) | |
| S. A. GODINEZ, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

This matter is before the Court on Plaintiff's Motion for Summary Judgment (Doc. 69), Defendants' Motion for Partial Summary Judgment (Doc. 90), and Defendants' Motion for Separate Trials (Doc. 193). On June 9, 2014, Plaintiff commenced this action pursuant to 42 U.S.C. § 1983, alleging several constitutional violations regarding his religious rights as a Paganist (Doc. 1). He proceeds on the following claims:

**Count 1:** First Amendment claim against Defendants Godinez, Flagg, Brookhart, Robert, Kline, and Haverhals for violating the Free Exercise, Free Speech, and Establishment Clauses by banning the pentacle, limiting the use of tarot cards, requiring additional screening of pagan literature, and subjecting Plaintiff to religious messages in the chapel.

**Count 2:** Fourteenth Amendment claim against Defendants Godinez, Flagg, Brookhart, Robert, Kline, and Haverhals for violating the Equal Protection Clause by banning the pentacle, limiting the use of tarot cards, requiring additional screening of pagan literature, and subjecting Plaintiff to religious messages in the chapel.

**Count 3:** Claim for injunctive relief under Religious Land Use and Institutionalized Persons Act against Defendants Godinez and Flagg, in their official capacities, for banning the pentacle, limiting the use of tarot cards, requiring additional screening of pagan literature, and subjecting Plaintiff to religious messages in the chapel.

(Doc. 8).

Plaintiff moves for summary judgment on all claims (Doc. 69). Defendants move for summary judgment on Counts 2 and 3, arguing that Plaintiff has not demonstrated an equal protection claim, that Plaintiff's request for injunctive relief is moot, and that Defendants are entitled to qualified immunity (Doc. 90).

## FACTUAL BACKGROUND

From March 21, 2013 to July 8, 2015, Sangraal was incarcerated by the Illinois Department of Corrections ("IDOC") at various facilities, including Stateville Correctional Center, Robinson Correctional Center ("Robinson"), Centralia Correctional Center ("Centralia"), and Pinckneyville Correctional Center. During the relevant period, Defendant Godinez was the Director for the Department of Corrections; Defendant Brookhart was the Assistant Warden at Robinson; Defendant Flagg was the Warden and Assistant Warden at Centralia; Defendant Robert was the Warden at Centralia; and Defendants Kline and Haverhals were chaplains at Centralia.

Sangraal is a member of the Pagan religion, which consists of a belief in multiple deities, magic, and divination (Plaintiff's Deposition, Doc. 91-1 at 32). Other aspects of the Pagan religion observed by Sangraal include wearing a pentacle, which is a circle circumscribing an interwoven star with five points, and use of divination tools, such as tarot cards and runes (*Id.* at 33-35, 54-55).

Religious items are generally permitted by IDOC policy (Doc. 71 at 20). In 2012, Defendant Godinez issued a memorandum regarding inmate possession of items with stars consisting of five and six points ("the Memorandum"), which states as follows:

> The purpose of this memorandum is to clarify previous direction regarding the possession of items with 5 and 6 point stars by offenders.

> The 5 point star is one of the symbols of the People Nation, a well-known Chicago based group of street gangs, and the 6 point star is one of the symbols of the Folk Nation, another well-known Chicago based group of street gangs. These star symbols are used as gang identifiers and are frequently used to mark gang territory or as an assertion of power. Many offenders incarcerated in IDOC facilities are members of these particular gangs/security threat groups.
>
> A religious item which is not star-shaped, but has a 5 or 6 point star or stars on it as part of a larger composition, such as a medallion with a crescent moon and a small star in its curve or a medallion of a saint with a halo of stars is still permissible. Any written material with a 5 or 6 point star should be reviewed in accordance with Department Rule 525C, like any other publication.

(*Id.* at 14). On October 8, 2013, IDOC's Chief Chaplain sent an email directing chaplains to deny requests by Pagan inmates for pentacles based on the Memorandum and further advised chaplains to recommend various other Pagan symbols (Doc. 71-1 at 29).

During his deposition, Sangraal testified that, while at Centralia, he requested a pentacle from Defendant Kline, who showed Sangraal the Memorandum and denied the request (Doc. 91-1 at 43-44). Consistent with the Chief Chaplain's email, Kline recommended alternative symbols to Sangraal (*Id.* at 99).

Sangraal also requested a pentacle from Defendants Haverhals and Flagg (*Id.* at 45-47). Haverhals told Sangraal that the pentacle did not qualify as a larger composition as contemplated by the Memorandum (*Id.* at 105-107). Flagg did not respond to Sangraal's written requests (*Id.* at 51). Flagg also approved the denial of Sangraal's grievances related to the pentacle (Doc. 71-2 at 9-11). Sangraal sent Defendant Robert an emergency grievance regarding the pentacle but did not receive a response (Doc. 70 at 4; 71-2 at 6-7).

Sangraal was also not allowed to possess individual tarot cards during his incarceration (Doc. 91-1 at 58). He was permitted to receive and possess photocopies of tarot cards with several tarot cards on a single page, but the photocopies did not satisfy his religious needs because they did not allow him to engage in divination (*Id.* at 59-60). Brookhart (Robinson) and

Flagg (Centralia) each prevented Sangraal from receiving a shipment of tarot cards (*Id.* at 61-64). According to Sangraal's Verified Complaint, Kline and Haverhals also denied his requests for tarot cards (Doc. 1 at 17, 21-22). Kline showed Sangraal a policy that banned tarot cards due to their use as a fortune-telling device (Doc. 71-2 at 8-9). On September 26, 2013, a correctional counselor informed Sangraal that he could not have tarot cards due to department policy and security concerns (*Id.*). Sangraal sent Defendant Robert an emergency grievance regarding the tarot cards but did not receive a response (Doc. 70 at 4; 71-2 at 8-11).

According to IDOC policy, each facility is to establish an institutional publication review committee to review publications that "may pose detrimental [sic] to security, good order, rehabilitation, or discipline or if it might facilitate criminal activity, or be detrimental to mental health needs of an offender as determined by a mental health professional" (Doc. 71 at 21). Sangraal testified that one of his books was sent to the publications review committee (Doc. 91-1 at 68). When he asked a correctional officer for an explanation, the officer responded that the book was sent to review because it was a witchcraft book (*Id.* at 68-69). Sangraal received the book after a delay of a week or less (*Id.* at 71). To Sangraal's knowledge, only one of the books he received was sent for publications review, and he was never denied any books that he requested (*Id.* at 70, 72-73). Sangraal submitted a grievance to complain that he did not receive a written explanation of why the book was submitted for review and Flagg denied the grievance (*Id.* at 74; Doc. 71-1 at 1).

While at Centralia, Sangraal was subjected to overt Christian messages in the chapel (Doc. 91-1 at 75-76). Specifically, a large, prominently displayed sign in the chapel read, "REPENT AND BE BAPTIZED" (*Id.*). Sangraal went to the chapel on six occasions, which included orientation and religious meetings arranged by Defendant Haverhals (*Id.* at 66-67).

Sangraal felt pressure to convert to Christianity due to the presence of the sign (*Id.* at 77). He submitted an emergency grievance to Defendant Robert regarding the sign (Doc. 70 at 3; Doc. 71-1 at 7).

**Admissions**

On August 18, 2015, Magistrate Judge Philip M. Frazier entered an Order finding that Defendants Godinez, Brookhart, Kline and Flagg had admitted each of Plaintiff's two hundred twenty-eight requests for admissions pursuant to Fed. R. Civ. P. 36(a)(3) (Doc. 62). "A matter admitted under [Rule 36] is conclusively established." Fed. R. Civ. P. 36(b). "Admissions made under Rule 36, even default admissions, can serve as the factual predicate for summary judgment." *United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987); Fed. R. Civ. P. 56(c)(1)(A). However, admissions are limited to "facts, the application of law to fact, or opinions about either." Fed. R. Civ. P. 36(a)(1).

According to the Order, Defendants Godinez[1], Brookhart, Kline and Flagg have admitted to the following: Pentacles are recognizable symbols and not readily confused with other five-pointed stars (Doc. 71 at 4); security threat groups are known to use religious symbols that are permitted (*Id.* at 6); Defendants are not aware of the significance or symbolism of the pentacle to Paganism, and there is no adequate substitute for the pentacle (*Id.* at 5, 8); Sangraal is sincere in his desire to wear a pentacle for religious purposes and disallowing a sincere adherent from wearing his religious symbol places a significant burden on that person's Free Speech and religious Free Exercise (*Id.* at 4); banning pentacle medallions in the IDOC does not rationally relate to any legitimate security or penological interest (*Id.* at 5); christian inmates are allowed to possess prayer cards without prior approval or restrictions (*Id.* at 9); non-pagan inmates are

---

[1] Defendant Baldwin has been automatically substituted for Defendant Godinez regarding the claims against him in his official capacity.

allowed to use playing cards and religious practices, including testimony and references to religious texts, to engage in fortune telling and manipulation of other inmates (*Id.* at 10-11); Defendants have a limited understanding of the manner in which Pagans use tarot cards (*Id.* at 10); disallowing a Pagan from using tarot cards for divination places a significant burden on that person's religious Free Exercise; allowing inmates to use tarot cards alone in a cell or in the chapel with other inmates under supervision would alleviate any security threat (*Id.*); Sangraal met with Defendants Haverhals and Kline in the chapel (*Id.* at 13); the other defendants have also been to the chapel and have seen the sign (*Id.*); and the chapel sign could have been moved or covered (*Id.*).

## **DISCUSSION**

Plaintiff moves for summary judgment on all claims. Defendants move for summary judgment on Counts 2 and 3, arguing that Plaintiff has not demonstrated an equal protection claim, that Plaintiff's request for injunctive relief is moot, and that Defendants are entitled to qualified immunity.[2]

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact

---

[2] More specifically, Defendants assert qualified immunity with respect to Counts 2 and 3. Because the Court disposes of Counts 2 and 3 on other grounds, the Court need not consider the qualified immunity defense.

exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In deciding a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

**Count 1 – First Amendment Claim – Godinez, Brookhart, Kline and Flagg**

Sangraal alleges that these defendants violated his right to free speech and free exercise under the First Amendment by banning the pentacle, limiting the use of tarot cards, and subjecting him to religious messages in the chapel. "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

Whether a governmental act is constitutional is generally a question of law to be decided by the Court. *See e.g., Volkman v. Ryker*, 736 F.3d 1084, 1089 (7th Cir. 2013) ("whether the employee's speech was constitutionally protected—is a question of law to be decided by the court"). The Seventh Circuit applies "the *Turner* legitimate penological interests test to determine whether [prisoners have] engaged in protected speech." *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009). "Several factors are relevant in reaching a determination, such as whether there is a connection between the regulation and a valid and neutral government interest; whether there are alternative means of exercising the constitutional right; and the impact that accommodation of the asserted right will have on guards, inmates, and the allocation of prison

resources." *Id.* at 548. "[T]he protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532, (1993). The *Turner* test also applies to the right to free exercise. *Kaufman v. McCaughtry*, 419 F.3d 678, 682 (7th Cir. 2005). Plaintiff must establish that the government imposed a substantial burden on Plaintiff's ability to practice his religion. *Id.* The Court then considers whether "legitimate penological interests outweigh the prisoner's religious interests." *Id.*

Sangraal argues that Defendants' admissions establish that prohibiting him from wearing a pentacle and possessing tarot cards is a substantial burden on his ability to exercise his religion. However, admissions made under Rule 36 are limited to facts. Whether a burden is substantial is a question of law and cannot be deemed admitted. Similarly, Defendants are deemed to have admitted that banning pentacle medallions in IDOC does not rationally relate to any legitimate security or penological interest. But rationality is also a question of law, not a fact that can be deemed admitted.

Regarding the tarot cards, the admissions state that allowing inmates photocopies of tarot cards with several tarot cards on a single page does not allow Sangraal to engage in divination and places a substantial burden on religious free exercise. The admissions further concede that allowing inmates to use tarot cards either alone in a cell or in the chapel with others under supervision would not significantly burden correctional resources. Again, whether the burden is significant is a question of law.

That said, the admitted *facts* alone regarding the banning of the pentacle, limiting the use of tarot cards, and subjecting Sangraal to religious messages in the chapel, properly support

Sangraal's motion for summary judgment, regardless of the conclusions of law that were also included. Defendants do not proffer any specific facts raising a genuine issue for trial with respect to Sangraal's free speech and free exercise claims against Defendants Godinez, Brookhart, Kline and Flagg. As such, the Court finds as a matter of law that the regulations impinge on Sangraal's constitutional rights and are not reasonably related to legitimate penological interests.

Sangraal also asserts that Defendants' conduct violated the Establishment Clause. "The Establishment Clause guarantees that the government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which establishes a state religion or religious faith, or tends to do so." *Kerr v. Farrey*, 95 F.3d 472, 476 (7th Cir. 1996). "The Establishment Clause also prohibits the government from favoring one religion over another without a legitimate secular reason." *Kaufman v. McCaughtry*, 419 F.3d 678, 683 (7th Cir. 2005) (*Kaufman I*). The Seventh Circuit has addressed Establishment Clause protections in the prison context on numerous occasions.

In *Kaufman I*, the Seventh Circuit held that prohibiting a group of atheists from meeting while allowing groups of other religious adherents violated the Establishment Clause. *Id.* at 684. The Court noted that the Department of Corrections failed to articulate "a secular reason why a meeting of atheist inmates would pose a greater security risk than meetings of inmates of other faiths." *Id.* Conversely, In *Henderson v. Frank*, 190 F. App'x 507 (7th Cir. 2006), the Seventh Circuit found that providing a television channel devoted exclusively to Christian programming, but not providing similar channels for other religions did not violate the Establishment Clause. The Court reasoned that prisons were not required to provide identical worship opportunities for every religious group, but instead were required "only to afford all prisoners reasonable

opportunities to exercise their religious freedom." *Id.* at 509. The Court also noted that that the prison did nothing to encourage watching the channel and that prisoners were permitted to change the channel or not watch television. *Id.*

In *Kaufman v. Pugh*, 733 F.3d 692 (7th Cir. 2013) (*Kaufman II*), an inmate requested permission to wear an atheist religious symbol created by the inmate – a sterling silver ring engraved with the word "knowledge" – but the prison denied the request. IDOC cited security concerns due to gang symbols. *Id.* at 699. The Seventh Circuit held that the denial did not violate the Establishment Clause because prisons are permitted to draw a line between symbols that are commonly used by a religious group and are easy to recognize and symbols that are only used by a single prisoner. *Id.*

In this case, with respect to Sangraal's pentacle, the admissions establish that other religious groups are permitted to wear religious symbols, including the Star of David, crosses, rosaries, and prayer beads. The admissions also establish that at least some of these symbols are also used by gangs and other groups that would present a security concern. Regarding the tarot cards, the record suggests that Defendants prevented Sangraal from possessing tarot cards based on the security risk posed by fortune-telling and the potential for manipulation of other inmates. The question of whether the government favored one religion over another without a legitimate secular reason is an issue of law to be decided by the Court.

Once again, the Court concludes that the admitted facts support summary judgment on this issue. Defendants have not set forth any facts that create a genuine issue for trial regarding Plaintiff's Establishment Clause claims against Defendants Godinez, Brookhart, Kline and Flagg. The undisputed facts indicate that defendants favored one religion over another without a legitimate secular reason.

Defendants essentially concede that the above-referenced admissions entitle Plaintiff to Summary Judgment on his First Amendment claim against Defendants Godinez, Brookhart, Kline and Flagg, but argue that Plaintiff's damages for this claim are limited to $1. Defendants are correct.

Plaintiff asserts that he is entitled to compensatory damages and nominal damages. But "no compensatory damages may be awarded in a § 1983 suit absent proof of actual injury." *Farrar v. Hobby*, 506 U.S. 103, 112, 113 S. Ct. 566, 573, 121 L. Ed. 2d 494 (1992). For a constitutional violation without proof of actual injury, a plaintiff may recover nominal damages – typically, an award of one dollar to emphasize that the state's scrupulous observance of constitutional rights is imperative. *Id.*; *Moore v. Liszewski*, 838 F.3d 877, 878 (7th Cir. 2016). In fact, courts are obligated to award nominal damages when a plaintiff proves a constitutional violation but cannot prove compensatory damages. *Farrar v. Hobby*, 506 U.S. 103, 112 (1992); *Calhoun v. DeTella*, 319 F.3d 936, 942 (7th Cir. 2003).

Here, there is no evidence that Sangraal suffered an actual injury as a result of the violation of his First Amendment rights. Thus, as a matter of law, he is entitled to recover nominal damages, but no compensatory damages. 42 U.S.C. § 1997e(e).

Sangraal also seeks punitive damages. However, based on the evidence in the record, he has not satisfied the threshold showing necessary for an award of punitive damages. Punitive damages are designed to punish and deter wrongdoing and "may be awarded under § 1983 upon a showing of evil motive or intent, or reckless or callous indifference to the federally protected rights of others." *Calhoun*, 319 F.3d at 942. Although the PLRA allows plaintiffs to recover punitive damages, the record contains no facts that would suggest religious animus motivated

Defendants or that Defendants acted with the knowledge or intent to violate Sangraal's constitutional rights.

Defendant Godinez's policy prohibiting star medallions does not expressly target pentacles; rather, it specifically articulates an exception for certain religious items. Defendants attempted to accommodate Sangraal by allowing him to possess copies of tarot cards. Likewise, Defendant Kline attempted to provide a religious accommodation by informing inmates of other approved religious items. While Sangraal complains that he observed the chapel sign when Defendant Haverhals accommodated his religious needs by facilitating meetings for paganist inmates, no evidence suggests that Sangraal notified Kline or Haverhals that he took offense to the chapel sign. In sum, the record reflects that Defendants may have fallen short in their attempts to accommodate Sangraal's religious beliefs, but it does not suggest that they intentionally or recklessly disregarded his constitutional rights. Therefore, no reasonable jury could impose punitive damages. *See Juarez v. Menard, Inc.*, 366 F.3d 479, 482 (7th Cir. 2004) (affirming the denial of punitive damages at the summary judgment stage).

Because as a matter of law, Sangraal is not entitled to seek compensatory damages, and no reasonable jury could impose punitive damages, Plaintiff's Motion for Summary Judgment as to Count 1 is **GRANTED** against Defendants Godinez, Brookhart, Kline and Flagg, and Plaintiff is **AWARDED** nominal damages of $1.00 against these defendants.

**Count 1 – First Amendment Claim – Robert and Haverals**

Plaintiff's Requests for Admissions were sent to the Attorney General's Office on April 8, 2015 and directed to "the defendants." At the time of service, the Attorney General's Office represented Defendants Godinez (in his individual and official capacity), Flagg, Brookhart, and Kline. An appearance was filed for Defendant Robert on April 24, 2015 (Doc. 49). The

Attorney General's Office appeared for Defendant Haverhals on November 12, 2015 (Doc. 75). Therefore, Sangraal served his Requests for Admissions only on Defendants Godinez[3], Flagg, Brookhart, and Kline. Because Sangraal supported his motion for summary judgment by referencing admissions that do not apply to these two defendants, genuine issues of material facts exist as to all of the elements of Plaintiff's First Amendment claims against them. Accordingly, Plaintiff's motion is **DENIED** with respect to Defendants Robert and Haverhals.

### Count 2 – Equal Protection Clause

In Count 2, Sangraal alleges that Defendants Godinez, Flagg, Brookhart, Robert, Kline, and Haverhals violated the Equal Protection Clause by banning the pentacle, limiting his use of tarot cards, and subjecting him to religious messages in the chapel. However, plaintiffs may not recast claims of religious discrimination under the Equal Protection Clause – the First Amendment governs such claims. *McClain v. Rogers*, 155 F. App'x 918, 920 (7th Cir. 2005); *Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005). Therefore, the Court disregards the religious components of Plaintiff's Equal Protection claim. *See Reed v. Faulkner*, 842 F.2d 960, 962 (7th Cir. 1988).

Because Plaintiff's claim does not relate to his membership in any other protected class, rational basis review applies. *See Flynn v. Thatcher*, 819 F.3d 990, 991 (7th Cir. 2016). "Prison classifications are presumed to be rational and will be upheld if any justification for them can be conceived." *Id.* To uphold governmental conduct under rational basis review, the Court "need only find a reasonably conceivable state of facts that could provide a rational basis for the classification. *Indiana Petroleum Marketers & Convenience Store Ass'n v. Cook*, 808 F.3d 318, 322 (7th Cir. 2015).

---

[3] Defendant Baldwin has been automatically substituted for Defendant Godinez regarding the claims against him in his official capacity.

Sangraal's claim fails because he identifies no classification other than religious groups and he fails to identify any similarly situated individual that was treated differently. Nothing in the record suggests that any exceptions were made for inmates with regard to the pentacle ban, limitations on tarot card use, or religious messages in the chapel. Therefore, with respect to Plaintiff's Equal Protection Clause claim, Plaintiff's Motion for Summary Judgment is **DENIED** and Defendants' Motion for Summary Judgment is **GRANTED**.

**Count 3 – Religious Land Use and Institutionalized Persons Act**

Sangraal seeks an injunction against banning the pentacle, limiting the use of tarot cards, requiring additional screening of pagan literature, and subjecting Sangraal to religious messages in the chapel, under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). Defendants argue that Sangraal's request for injunctive relief is moot because he is no longer incarcerated by the Department of Corrections and no other type of relief is available under the RLUIPA. Sangraal maintains that his request is not moot because he intends to send tarot cards, pentacles, and religious publications to inmates that observe the Pagan religion and to conduct religious services at the Centralia chapel.

The First Amendment encompasses the right of unincarcerated individuals to communicate with inmates. *See Thornburgh v. Abbott*, 490 U.S. 401, 408 (1989). However, Sangraal has not amended his Complaint to allege that his right to communicate with inmates has been violated, and the Court's consideration is limited to the claims asserted in the Complaint. (*See* Doc. 1.)

Moreover, "[i]f a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless he can demonstrate that he is likely to be retransferred." *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996). "Allegations of a likely

retransfer may not be based on mere speculation." *Id.* "The capable-of-repetition doctrine applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subject to the alleged illegality." *Id.* The issue of mootness in prisoner cases is discussed more frequently in the context of transfers between correctional facilities, but the reasoning applies with equal force in the context of release from custody. As Sangraal offers no evidence to suggest that he is likely to return to the custody of the Department of Corrections, his request for injunctive relief is indeed MOOT. Because no other relief is available under RLUIPA, Plaintiff's Motion for Summary Judgment as to Count 3 is **DENIED** and Defendants' Motion for Summary Judgment is **GRANTED** as to this Count.

### Motion for Separate Trials

Only claims against Defendants Haverhals and Robert remain. As such, Defendants' motion for separate trials (Doc. 193) is **DENIED as MOOT**.

### CONCLUSION

Plaintiff's Motion for Summary Judgment (Doc. 69) is **GRANTED** on Count 1 against Defendants Godinez, Brookhart, Kline and Flagg on the issue of liability, but **DENIED** with respect to compensatory and punitive damages; Plaintiff is awarded nominal damages of $1.00 against Defendants Godinez, Brookhart, Kline and Flagg. Plaintiff's motion is **DENIED** on Count 1 as to Defendants Haverhals and Robert.

Defendants' Motion for Partial Summary Judgment (Doc. 90) is **GRANTED** as to Counts 2 and 3. Defendants' Motion for Separate Trials (Doc. 193) is **DENIED**.

**IT IS SO ORDERED.**

**DATED: March 13, 2018**

                                                **s/ Staci M. Yandle**
                                                **STACI M. YANDLE**
                                                **United States District Judge**